**EVANS et al. v. INGRAM et al. (No. 398.)**

(Court of Civil Appeals of Texas. Waco.
Oct. 21, 1926. Rehearing Denied
Nov. 18, 1926.)

1. **Husband and wife ⬅262(1)—Land deeded to husband during marriage is presumed to be community property.**

Where land had been deeded to deceased husband during marriage, it was presumed to be community property, and burden was on one claiming otherwise to show contrary affirmatively.

2. **Husband and wife ⬅249—Where title to property conveyed to husband during marriage has originated in some right acquired before marriage, it is deemed separate property.**

Where, upon consideration of entire transaction, it appears that title to property conveyed to husband during marriage had its origin in some right acquired by him before marriage, it is deemed separate property, and such title, when perfected, related back to time of inception of such right.

3. **Frauds, statute of ⬅125(3)—Statute does not declare parol contracts for sale of land illegal or void.**

Parol contracts for sale of land are not illegal or void under statute, but their enforcement may be successfully resisted when statutory requirements are not observed.

4. **Frauds, statute of ⬅125(1)—Statute presupposes legality of contract, enforcement of which is only suspended until statutory provisions are satisfied.**

It is not compliance with statute of frauds which constitutes a valid contract, since statute presupposes legality, and enforcement of contract is only suspended by statute until its provisions are satisfied.

5. **Frauds, statute of ⬅139(5) — Rights of parties under parol contract for sale of land that has been completely performed are not affected by statute.**

When parol contract for sale of land has been completely performed by parties, their rights and obligations flowing from its execution are not impaired or increased by statute of frauds.

6. **Frauds, statute of ⬅139(5)—Parol contract for sale of land before grantee's marriage, to which title was conveyed after grantee's marriage, was valid (statute of frauds).**

Where parol contract for sale of land was made before grantee's marriage and was carried out by both parties by mutual consent and title conveyed to grantee after his marriage, contract was neither illegal nor void under statute.

7. **Frauds, statute of ⬅143(1) — Plaintiffs seeking partition could not question validity of conveyance as against grantor under statute, where he had waived benefit thereof.**

Where parol contract for purchase of land had been made before grantee's marriage, and land had been conveyed to him after his marriage, plaintiffs seeking partition could not question validity of contract under statute as against grantor, since defense was personal to grantor and he had waived benefit thereof.

8. **Husband and wife ⬅264—Parol contract for purchase of land made before husband's marriage, together with acts of parties thereunder, held to justify finding that land was husband's separate property, even though title was conveyed after marriage.**

Where husband made parol contract for purchase of land before marriage, and land was conveyed to him after marriage, such parol contract, together with acts of parties shown by evidence, constituted such an equitable right to property acquired before marriage as to warrant finding that land was his separate property.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Partition suit by H. C. Evans and another against Caroline Ingram and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Jack & Jack, of Corsicana, for appellants.
H. E. Wassell, of Corsicana, for appellees.

GALLAGHER, C. J. This suit was instituted by H. C. Evans and Odie Young, appellants herein, against Caroline Ingram and her four children, appellees herein, for partition of a tract of land containing 72½ acres. The property sought to be partitioned was purchased by Gil Ingram, an ex-slave, from Jim Ingram. Gil Ingram had possession of said land, and cultivated, improved, and claimed the same for about 10 years before his marriage to Malley Ingram, the mother of appellants, but his deed thereto from Jim Ingram was dated about 18 months after such marriage. Appellants are children of Malley Ingram born to her before said marriage and are her only heirs. Gil Ingram and his wife, Malley Ingram, the mother of appellants, occupied said land as a home during the continuance of their marital relations. She died 6 or 8 years after her marriage to him. After her death Gil Ingram married appellee Caroline. The other appellees herein are the offspring of said marriage. After his marriage to Caroline, Gil Ingram continued to use and occupy said land as a homestead until his death, which occurred in 1905. Appellees have continuously used and occupied said land since his death. There was a trial to the court and judgment for appellees, which judgment is here presented for review.

*Opinion.*

Appellants claim that said land was community between Gil Ingram and their deceased mother, and that they, as her only heirs, are entitled to her community half thereof. They admit that appellees are the only heirs of Gil Ingram, and that they are

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

entitled to his community half of said land. Appellees contend that said land was the separate property of Gil Ingram, and claim that they are entitled to all of the same as his heirs at law.

The evidence introduced showed that Gil Ingram was slave in the Ingram family; that said family were large landowners; that shortly after the war Jim Ingram began to sell land to the negroes; that his custom was to sell land in small tracts and on a credit; that he merely put the purchaser in possession and required him to pay for the land out of the cotton raised on it; that when the full amount of cotton agreed upon had been delivered to him he made deed to the purchaser when requested to do so. The evidence further showed that Gil Ingram bought the land in controversy from Jim Ingram in 1869 or 1870; that he entered into possession of the same and built a log cabin thereon; that he resided on said land and claimed the same continuously thereafter; that he cleared a part of said land and put it in cultivation to make it pay for itself; that he also built two other houses on the land and had them occupied by tenants. Tax receipts were introduced in evidence showing affirmatively that Gil Ingram paid the taxes on said land for the years 1875, 1876, 1878, 1879, and 1880. Gil married Malley on March 8, 1879. The deed from Jim Ingram to Gil Ingram recited a cash consideration, was dated October 16, 1880, and acknowledged and filed for record on the 31st day of March, 1881. There was affirmative evidence that no additional land was cleared while Gil and Malley lived together. There is no evidence in the record of any additional improvements during said time.

The court's findings of fact are voluminous, and include in part findings of the evidence introduced rather than the ultimate facts in issue. We quote from said findings the following on the particular issue here under consideration:

"The court finds that said land was the separate property of Gil Ingram, the husband and father of the defendants, the same having been purchased by him approximately ten years previous to his marriage with the mother of plaintiffs in 1879."

[1, 2] The land in controversy having been deeded to Gil Ingram during his marriage to Malley, the same must be deemed community property unless the contrary is affirmatively shown. If, however, upon consideration of the entire transaction it appears that the title had its origin in some right acquired by him before the marriage, it will be deemed separate property and such title when perfected related back to the time of the inception of such right, notwithstanding such title was not perfected by the execution and delivery of the deed until after marriage. Welder v. Lambert, 91 Tex. 510, 520, 526, 44

S. W. 281; Creamer v. Briscoe, 101 Tex. 490, 491, 492, 109 S. W. 911, 130 Am. St. Rep. 869, 17 L. R. A. (N. S.) 154; Jackson v. Jackson (Tex. Civ. App.) 258 S. W. 231, 232. In connection with the finding under consideration, the court further found that Gil Ingram purchased the land in controversy from Jim Ingram on a credit and under an oral contract; that the real consideration therefor was not as stated in the deed, but was a certain number of bales of cotton to be delivered by Gil to Jim Ingram; and that when the same were delivered he was to give Gil a deed to the land. There is no controversy over the fact that the acts of ownership over said land exercised by Gil Ingram and the improvement of the same by him as shown by the evidence above recited all occurred prior to his marriage to Malley.

[3-5] Appellants, however, contend that said parol contract for the sale and purchase of said land was invalid and unenforceable by reason of the requirements of our statute of frauds, and that the same was therefore wholly insufficient to constitute such an incipient right as would control the character of the title to said land with reference to being separate or community. The statute does not declare parol contracts for the sale of land illegal or void. Their enforcement may be successfully resisted when the statutory requirements are not observed if the defendant invokes the statute (provided, of course, that there is no such part performance as to take the case out of the statute). It is not compliance with the statute, however, which constitutes the contract. The statute presupposes its legality, the enforcement of which is only suspended by the statute until its provisions are satisfied. When such a contract has been completely performed by the parties their rights and obligations flowing from its execution are not impaired or increased or in any degree attempted to be affected by the statute. Robb v. San Antonio Street Ry. Co., 82 Tex. 392, 395, 396, 18 S. W. 707; Simpson v. Green (Tex. Com. App.) 231 S. W. 375, 377, and authorities there cited.

[6-8] The contract between Jim Ingram and Gil Ingram was neither illegal nor void, and it was carried out by both parties by mutual consent and apparently without any misunderstanding or controversy. If said contract was, as contended by appellants, unenforceable against Jim Ingram by reason of the requirements of the statute of frauds, he could waive and did waive the benefit thereof. League v. Davis, 53 Tex. 9, 14. The defense was personal to him. Malley and her children were strangers to said contract, and appellants ought not to be heard to question its validity on the ground of said statute. G., C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 261, 15 S. W. 228, and authorities there cited; Bringhurst v. Texas Company, 39 Tex. Civ. App. 500, 87 S. W. 893, 896, 897

(writ refused). While said contract at the time it was made was within the statute, it was voluntarily executed by the parties thereto, and the rights acquired by them thereunder were not impaired nor affected by said statute. Said parol contract of sale and purchase, together with the acts of the parties thereunder as disclosed by the evidence, constituted such an equitable right to said property in Gil Ingram at and prior to his marriage to Malley as to justify the court in finding said land to be his separate property. Hand v. Errington (Tex. Civ. App.) 233 S. W. 567, 570, 571 (affirmed after discussing other issues [Tex. Com. App.] 242 S. W. 722); Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89, 91, 94; Bishop v. Williams (Tex. Civ. App.) 223 S. W. 512, 514, 515 (writ refused). See, also, on the question of the nature of an antecedent right or claim held sufficient to control the separate or community character of property subsequently acquired, the following cases: Porter v. Chronister, 58 Tex. 53, 54, 55; Norton v. Cantagrel, 60 Tex. 538; Manchaca v. Field, 62 Tex. 135, 138, 139.

We do not find it necessary to decide whether under the evidence there was such part performance of said oral contract of purchase on the part of Gil Ingram as to take the same out of the statute of frauds and entitle him to a decree of specific performance against Jim Ingram on tender of the remainder, if any, of purchase money unpaid. Our Supreme Court has held, however, that one who has been placed in possession of land under a parol contract of purchase, and who has made valuable improvements on the faith of such contract, on tendering the purchase money agreed upon is entitled to decree of specific performance. Schrimpf v. Settegast, 38 Tex. 96, 109; Hibbert v. Aylott, 52 Tex. 530, 532, 533; Hickman v. Withers, 83 Tex. 575, 579, 580, 19 S. W. 138.

Our holding on the issue above discussed renders appellants' complaint of the findings of the court on the issue of limitation immaterial.

We have examined all the other points presented by appellants as grounds for reversal, and, being of the opinion that no reversible error is shown, same are all overruled.

The judgment of the trial court is affirmed.